**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| VIRSEC SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | **Civil Action No. 1:26-cv-02992**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

1. Plaintiff Virsec Systems, Inc. ("Virsec" or "Plaintiff") brings this patent infringement action against Defendant Apple Inc. ("Apple" or "Defendant").

2. Virsec is a pioneer in cybersecurity, particularly in the field of runtime application and workload protection. Its principal inventor, Satya Gupta, founded the company in June 2005 after realizing that established companies were approaching cybersecurity the wrong way. Mr. Gupta recognized that the industry needed new technology to provide real-time detection and prevention of memory corruption attacks that are used to compromise application workloads. Virsec's technology, which is now protected by over fifty United States patents, proved to be a major breakthrough and an essential tool in thwarting a new generation of cybersecurity attacks via real-time detection and prevention.

3. For example, Virsec's TrustGuardian™ product, depicted below, provides persistent runtime protection to identify and prevent attacks.




4. Unlike conventional security tools that rely on signatures, heuristics, or behavioral analysis to detect threats after they have begun to execute, Virsec's patented innovations and products, such as TrustGuardian™, operate at the runtime level to map and enforce the expected execution behavior of protected software, automatically identifying and blocking unauthorized deviations as they occur and before any damage can be done.

5. Virsec's technology has been deployed to protect mission-critical infrastructure across both commercial and government environments, and the company has received significant investment and industry recognition for its contributions to advancing the state of the art in application-aware, runtime security. For example, in 2026, Virsec won the Best in SaaS Award for AI-Powered Application Security. The Asserted Patents, defined below, are directed at key aspects of Virsec's innovations.

6. Apple is familiar with Virsec and its technology. In early 2017, the parties engaged in a series of discussions culminating in Virsec providing a "technical deep dive" on its technology. Virsec was surprised and disappointed when Apple abruptly went silent. But the reason for Apple's silence soon became clear. Beginning in 2018 with the A12 processor in the iPhone XS and iPhone XR, Apple introduced the "arm64e" architecture and pointer authentication codes ("PAC") on its

devices. Apple explains that, when a pointer fails authentication, the processor "interprets authentication failure as memory corruption" and causes the application to crash. Apple subsequently released immediate trap by libmalloc, and memory integrity enforcement ("MIE"). Apple has publicly stated that these technologies are among the most important for resisting exploitation. In 2024, Apple launched Private Cloud Compute, a cloud service that runs on Apple-operated, custom-built servers using Apple silicon.

7. Virsec brings this lawsuit to address Apple's infringement of the Asserted Patents.

## NATURE OF THE ACTION

8. This is a civil action for infringement of United States Patent Nos. 8,966,312 (the "'312 patent") and 10,331,888 (the "'888 patent") (collectively, the "Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 et seq.

## THE PARTIES

9. Virsec is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 325 S. 1st Street, Suite 120, San Jose, CA 95113.

10. Apple is a California corporation with facilities at 6900 West Parmer Lane, Austin, Texas 78729. On information and belief, Apple has been registered to do business in the State of Texas since at least May 16, 1980, and may be served with process via its registered agent: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1 et seq.

12. The Court has personal jurisdiction over Apple because Apple conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice.

13. Additionally, or alternatively, the Court has personal jurisdiction over Apple because Apple has substantial, continuous, and systematic contacts with this State and the Western District of Texas such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. For example, Apple has committed and continues to commit acts of infringement in this District. Apple has made, used (including to protect its own devices and servers), sold, offered for sale, imported into, developed, and tested infringing products in this District, including through its retail stores in Austin, Texas. Further, Apple has induced others to use infringing products by acts carried out by Apple's employees in this District, and end-users have used infringing products in this District. As such, jurisdiction is consistent with the principles of due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code §§ 17.041, et seq.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because Apple has regular and established physical places of business in this District and has committed acts of patent infringement in this District. For example, Apple maintains a corporate campus and offices in this District, including at 6900 West Parmer Lane, Austin, Texas 78729; 12545 Riata Vista Circle, Austin, Texas 78727; and 5505 West Parmer Lane, Austin, Texas 78729. Apple also operates retail stores in this District. On information and belief, Apple employees at these facilities, including engineering personnel, use the Accused Products (defined below) for their everyday work as well as develop and test the Accused Products.

## THE ASSERTED PATENTS

15. The ’312 and ’888 patents, entitled “System and Methods for Run Time Detection and Correction of Memory Corruption,” stem from a common provisional patent application (No. 60/771,734) filed on February 9, 2006 and a non-provisional patent application (No. 11/673,541) filed on February 9, 2007. The ’312 and ’888 patents issued on February 24, 2015 and June 25, 2019, respectively. Copies of the ’312 and ’888 patents are attached to this Complaint as Exhibits 1-2.

16. At the time of the invention, and to this day, computing devices run multiple software applications concurrently, each assigned its own virtual memory. Multi-tasking, though essential for allowing end-users to use their computers productively, amplifies security concerns. Specifically, hackers can “corrupt” memory during execution—for example through buffer overflow, format-string, or heap-metadata attacks, or hijacking of pointers that control execution flow—causing the application to execute unintended, attacker-controlled instructions. The specification states that memory-corruption exploits accounted for more than half of the security vulnerabilities known at the time.

17. At the time, there were several countermeasures to these security vulnerabilities, but none were satisfactory. These included:

- Reactive, signature-based detection, as used in anti-virus software, depended on already knowing what a piece of malware looks like or how it behaves, and thus could not reliably catch novel (“zero-day”) exploits.
- Vendor patching involved the software vendor identifying security vulnerabilities and quickly pushing out patches to its user base. Unfortunately, this leaves a window of vulnerability between disclosure of a flaw and deployment of a fix,

during which enterprise users either remain exposed or must take mission-critical systems offline to patch.

- Hardware-level memory-error correction schemes (e.g., Error Correction Code-based recovery of physically failed memory) were designed to recover from physical/hardware memory failures, but could not address memory corruption caused by malicious software manipulation at the application layer.

18. As a solution, the specification describes storing, ahead of run-time, information about the application's expected structure (e.g., stack sub-frames, addresses that legitimate calls/returns/jumps should target, address-table contents, heap metadata) and, in some embodiments, a backup/"shadow" copy of protected memory structures.

19. At run-time, the invention dynamically checks a defined set of "invariants" tied to specific attack vectors by comparing the current state of memory/registers against the previously captured or expected state. This system declares an application layer memory corruption when a checked invariant fails to match the expected/backup state, and may then report the event and notify a user, administrator, or recovery module.

20. Because detection is based on structural invariants (e.g., "does this return address match the one we saved before the call?") rather than on recognizing a specific virus's signature or behavior, the specification represents that the approach advantageously catches zero-day attacks, works with binary executables without requiring recompilation or on-disk modification, and is lightweight so as to run continuously in production.

21. The written description of the '312 and '888 patents, therefore, describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is

patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

22. As an example, claim 1 of the ’312 patent recites:

> 1. A method comprising:
>
> detecting an application layer memory corruption of at least one portion of a control section of original memory by malicious code during run-time, where the application layer memory corruption affects execution flow of an application when otherwise left uncorrected, wherein detecting includes performing at least two different invariant checks at run-time, each invariant check including (a) capturing a state of one or more registers and at least one portion of a data segment of the control section prior to execution of a function call, (b) checking the state after the execution of the function call against the captured state and (c) declaring application layer memory corruption if the checked state and the captured state do not match; and
>
> reporting the application layer memory corruption to a user.

23. Claim 11 of the ’888 patent recites:

> 11. A method comprising:
>
> detecting an application layer memory corruption of at least one portion of a control section of memory by a heap attack, wherein detecting includes, in a given time frame:
>
> > (a) capturing a shadow copy of a checksum for heap metadata from the control section of memory;
> >
> > (b) calculating a current checksum for the heap metadata following execution of a heap operation;
> >
> > (c) checking the current checksum against the shadow copy of the checksum; and
> >
> > (d) declaring the application layer memory corruption based on the current checksum and the shadow copy of the checksum not matching in the given time frame; and
>
> automatically detecting a security attack of a computer application based on the declared application layer memory corruption, and reporting the detected security attack to a user.

24. The asserted claims of the ’312 and ’888 patents are valid, enforceable, and currently in full force and effect. Virsec holds all rights, title, and interest in the ’312 and ’888 patents with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

## CLAIMS FOR PATENT INFRINGEMENT

25. Apple designs, makes, uses, offers for sale, sells, and imports devices, operating systems, development tools, and services that perform PAC, immediate trap by libmalloc, MIE, and other invariant checks at run-time, including, for example, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, iPhone Air, iPhone 18 Pro, iPhone 18 Pro Max, iPad (M5), Mac computers (M5), Apple Watch Series 12, Apple TV 4K and their respective operating systems, Apple’s Xcode development environment, and Apple Clang compiler; and Apple’s Private Cloud Compute servers and service (collectively, the “Accused Products”).

26. The allegations provided below are exemplary and without prejudice to Virsec’s infringement contentions with respect to the Accused Products. In providing these allegations, Virsec does not convey or imply any particular claim constructions or the precise scope of the claims. Virsec’s claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court’s scheduling order and local rules.

27. As detailed below, each element of at least one claim of the Asserted Patents is literally present in the Accused Products. To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

## COUNT I: Infringement of the ’312 Patent

28. Virsec realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

29. Apple has infringed and continues to infringe at least claim 1 of the ’312 patent in violation of 35 U.S.C. § 271(a) by, among other things, using the Accused Products in the United States, including in this District, without the permission, consent, authorization, or license of Virsec. For example, Apple operates the servers that provide its Private Cloud Compute service to end-users.

30. On information and belief, Apple also performs the claimed method in an infringing manner in the United States and in this District when developing and testing the Accused Products and corresponding systems, when its employees use the Accused Products, and/or when providing or administering services to third parties, customers, and partners using the Accused Products.

31. The Accused Products meet all limitations of at least claim 1 of the ’312 patent. Exhibit 3, incorporated herein by reference, provides an exemplary element-by-element comparison of claim 1 against certain Accused Products, which Virsec provides without the benefit of information about the Accused Products obtained through discovery.

32. Virsec contends that each element of at least claim 1 is literally present in the Accused Products. If, as a result of the Court’s constructions or other determinations, one or more claim elements are not literally present, Virsec contends that each such element is present under the doctrine of equivalents.

33. Apple, in violation of 35 U.S.C. § 271(b), has also indirectly infringed and is indirectly infringing at least claim 1 of the ’312 patent by inducing third parties, including end-users and software developers, to use the Accused Products in the United States, and particularly in Texas. Through its sales of the Accused Products and its developer agreements and programs, Apple is doing so with actual or constructive knowledge of the ’312 patent, knows or should know

that the acts of these third parties will result in infringement of the ’312 patent, and has specific and actual intent to cause these third parties to infringe the ’312 patent.

34. Apple, in violation of 35 U.S.C. § 271(b), actively instructs, encourages, and/or aids such infringement through various acts, including instructing and/or training developers and customers to use one or more of the Accused Products in a manner covered by at least claim 1 of the ’312 patent. For example, Apple instructs developers to build and deploy arm64e binaries that use pointer authentication, and explains that pointer authentication offers “probabilistic protection of control flow integrity”:

- https://developer.apple.com/documentation/security/preparing-your-app-to-work-with-pointer-authentication (Ex. 4);
- https://developer.apple.com/documentation/apple-silicon/improving-control-flow-integrity-with-pointer-authentication (Ex. 5);
- https://developer.apple.com/videos/play/wwdc2024/10173/ (Ex. 6); and
- https://security.apple.com/blog/memory-integrity-enforcement/ (Ex. 7).

35. Apple had knowledge of the ’312 patent, and its infringement thereof, at least as a result of its 2017 interactions with Virsec. On information and belief, Apple investigated Virsec, its technology, and its patent portfolio, and thereby uncovered the ’312 patent. Apple has had actual knowledge of the ’312 patent and its infringement thereof at least as of the filing and service of this Complaint.

36. To the extent that Apple did not have actual knowledge of the ’312 patent, on information and belief, Apple willfully blinded itself to such knowledge based on the facts in the preceding paragraph. On information and belief, based on its knowledge of Virsec and its technology, Apple subjectively believed that there was a high probability of pending or issued

Virsec patents. Further, on information and belief, Apple took deliberate steps to avoid learning about such patents.

37. Apple has been, and currently is, contributorily infringing the ’312 patent, in violation of 35 U.S.C. § 271(c), by selling or offering to sell, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the ’312 patent, are known by Apple to be especially made or especially adapted for use in infringement of the ’312 patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Accused Products. Apple’s actions contribute to the direct infringement of the ’312 patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

38. Apple’s infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

39. Virsec has suffered and continues to suffer damage as a result of Apple’s infringement of the ’312 patent.

**COUNT II: Infringement of the ’888 Patent**

40. Virsec realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

41. Apple has infringed and continues to infringe at least claim 11 of the ’888 patent in violation of 35 U.S.C. § 271(a) by, among other things, using the Accused Products in the United States, including in this District, without the permission, consent, authorization, or license of Virsec. For example, Apple operates the servers that provide its Private Cloud Compute service to end-users.

42. On information and belief, Apple also performs the claimed method in an infringing manner in the United States and in this District when developing and testing the Accused Products and corresponding systems, when its employees use the Accused Products, and/or when providing or administering services to third parties, customers, and partners using the Accused Products.

43. The Accused Products meet all limitations of at least claim 11 of the ’888 patent. Exhibit 8, incorporated herein by reference, provides an exemplary element-by-element comparison of claim 11 against certain Accused Products, which Virsec provides without the benefit of information about the Accused Products obtained through discovery.

44. Virsec contends that each element of at least claim 11 is literally present in the Accused Products. If, as a result of the Court’s constructions or other determinations, one or more claim elements are not literally present, Virsec contends that each such element is present under the doctrine of equivalents.

45. Apple, in violation of 35 U.S.C. § 271(b), has also indirectly infringed and is indirectly infringing at least claim 11 of the ’888 patent by inducing third parties, including end-users and software developers, to use the Accused Products in the United States, and particularly in Texas. Through its sales of the Accused Products and its developer agreements and programs, Apple is doing so with actual or constructive knowledge of the ’888 patent, knows or should know that the acts of these third parties will result in infringement of the ’888 patent, and has specific and actual intent to cause these third parties to infringe the ’888 patent.

46. Apple, in violation of 35 U.S.C. § 271(b), actively instructs, encourages, and/or aids such infringement through various acts, including instructing and/or training developers and customers to use one or more of the Accused Products in a manner covered by at least claim 11 of the ’888 patent. See ¶ 34 for exemplary Apple instructions for an infringing configuration.

47. Apple had knowledge of the ’888 patent, and its infringement thereof, upon or shortly after its issuance on June 25, 2019. On information and belief, following its 2017 evaluation of Virsec and its technology, Apple monitored Virsec’s patent portfolio, including the continuation applications that issued from the same family as the ’312 patent, and thereby learned of the ’888 patent. Apple has had actual knowledge of the ’888 patent and its infringement thereof at least as of the filing and service of this Complaint.

48. To the extent that Apple did not have actual knowledge of the ’888 patent, on information and belief, Apple willfully blinded itself to such knowledge based on the facts in the preceding paragraph. On information and belief, based on its knowledge of Virsec and its technology, Apple subjectively believed that there was a high probability of pending or issued Virsec patents. Further, on information and belief, Apple took deliberate steps to avoid learning about such patents.

49. Apple has been, and currently is, contributorily infringing the ’888 patent, in violation of 35 U.S.C. § 271(c), by selling or offering to sell, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the ’888 patent, are known by Apple to be especially made or especially adapted for use in infringement of the ’888 patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Accused Products. Apple’s actions contribute to the direct infringement of the ’888 patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

50. Apple’s infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

51. Virsec has suffered and continues to suffer damage as a result of Apple’s infringement of the ’888 patent.

**JURY DEMAND**

52. Virsec demands a jury trial as to all issues that are triable by a jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Virsec respectfully prays for relief as follows:

a. Judgment that Apple is liable for direct infringement, and/or inducing the infringement, and/or contributing to the infringement of one or more claims of the Asserted Patents;

b. Compensatory damages in an amount according to proof, including lost profits, and in any event no less than a reasonable royalty;

c. A finding of willful infringement;

d. Increased damages under 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest;

f. Attorneys’ fees and costs based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees and costs;

g. An accounting and/or supplemental damages for all damages incurred by Virsec from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment; and

h. Any further relief that the Court deems just and proper.

Dated: October 23, 2026

Respectfully Submitted,

*/s/ James C. Yoon*

James C. Yoon (CA State Bar # 177155)
Ryan R. Smith (CA State Bar # 229323)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 493-9300
Fax: (866) 974-7329
Email: jyoon@wsgr.com
Email: rsmith@wsgr.com

**ATTORNEYS FOR PLAINTIFF**
**VIRSEC SYSTEMS, INC.**